IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TINA M. SUPPA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. _____ |
| v. ) | |
| ) | |
| ACCOUNTS RECEIVABLE ) | |
| MANAGEMENT, INC., ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendant. ) | |
| ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Tina M. Suppa ("Ms. Suppa"), by her undersigned counsel, alleges, on knowledge as to herself and on information and belief as to all other matters, as follows:

### Introduction

1. This is an action by an individual consumer for actual and statutory damages stemming from Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), which prohibits debt collectors from engaging in unfair, deceptive, or abusive practices in collecting consumer debts.

### Jurisdiction and Venue

2. This Court has subject matter jurisdiction over causes of action brought under the FDCPA, under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

3. Venue is proper in this district under 28 U.S.C. § 1391(b) because the Defendant transacts business here and the conduct complained of occurred here.

**Parties**

4. Plaintiff Tina M. Suppa is a natural person domiciled in the County of Erie and State of New York, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

5. Defendant Accounts Receivable Management, Inc. ("ARM") is a foreign business corporation organized and existing under the laws of the State of New Jersey with its principal place of business and corporate offices in Thorofare, New Jersey.

6. ARM regularly attempts to collect debts alleged to be due another, and is and has at all times pertinent hereto been a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

7. The acts of ARM alleged hereinafter were performed by its respective employees acting within the scope of their actual or apparent authority.

8. All references to "ARM" herein shall mean ARM or an employee thereof.

**Factual Allegations**

9. In November 2006, Ms. Suppa purchased a 2007 Chevrolet Aveo from Paddock Chevrolet in Kenmore, New York. Ms. Suppa financed the purchase price in part with a loan from GMAC Inc., now known as Ally Financial Inc. ("Ally").

10. The obligation thereby incurred arose out of a transaction in which money, services, or property, which was the subject of the transaction, was primarily for personal, family, and/or household purposes. As such, it is a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

11. In June 2010, Ms. Suppa lost her job and thus had difficulty making payments towards the Ally loan. However, Ms. Suppa obtained new employment to begin on August 30, 2010, and anticipated being able to consistently make payments again.

12. In August 2010, Ms. Suppa had fallen behind in payments on the loan, and she was contacted by phone by debt collectors concerning the loan.

13. In an effort to get the loan out of default, towards the end of August 2010, Ms. Suppa called Ally to request an extension of her payment plan.

14. Ms. Suppa and Ally executed an extension agreement in early September 2010. Ms. Suppa performed all of her obligations under the extension agreement with Ally.

15. Ms. Suppa continued to receive calls from debt collectors concerning the account after she executed the extension agreement with Ally. However, she phoned Ally about this and was told that these calls should stop now that the loan extension was in place, and not to worry about it. Ms. Suppa therefore did not take any further action to address the debt collection calls, which she continued to receive throughout September 2010.

16. Ms. Suppa called Ally on September 10, 2010, to inquire whether there was anything else she had to do to finalize the loan extension. Ally told her that she was "all set" and verified that no further payment was due from her at that time.

17. On September 24, 2010, Ms. Suppa's car was repossessed by debt collectors from TCAR Inc. hired by Ally.

18. Ms. Suppa phoned Ally to inquire why her car was being repossessed. Ally informed her that the car should not have been repossessed, and that whoever ordered the repossession had not read Ally's notes on the account, which clearly stated that a loan extension was in place.

19. Ms. Suppa continued to call to inquire with Ally as to why her car had been repossessed. About a week after the repossession, Ally again informed her that the car

should not have been repossessed, and that whoever ordered the repossession had not read the notes on the account, which clearly stated that a loan extension was in place.

20. During the same call, Ms. Suppa overheard another Ally employee based in Dallas, Texas, who stated in sum or substance that the loan extension never should have been granted and that was why the car was repossessed.

21. In November 2010, Ms. Suppa received from Ally in the mail a statement, dated November 4, 2010, stating that Ally had sold her car at auction on October 29, 2010, for $3,900, and demanding that she pay a balance due on the loan of $5,021.23.

22. Also in early November 2010, Ms. Suppa submitted a written complaint to the New York State Attorney General's Office concerning Ally's breach of contract and wrongful repossession of her car. The Attorney General transmitted Ms. Suppa's complaint to Ally on or before January 5, 2011.

23. On or after December 28, 2010, Ally consigned, placed, or otherwise transferred the subject debt to ARM for collection from Ms. Suppa.

24. Beginning on or after December 28, 2010, ARM began attempting to collect the subject debt by means of letters and phone calls to Ms. Suppa.

25. On January 5, 2011, at approximately 11:32am, ARM phoned Ms. Suppa's daughter Madeleine and discussed Ms. Suppa's alleged debt to Ally with her. This violated various provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692b(2) and 1692c(b).

26. ARM's call to Ms. Suppa's daughter did not have any purpose to obtain or confirm location information regarding Ms. Suppa. Prior to January 5, 2011, Ally and ARM were in possession of such location information and had used it to contact her.

27. In its first written communication with her concerning the subject debt, ARM overshadowed Ms. Suppa's rights under the FDCPA by stating "Please cooperate by mailing your payment. Do not ignore this request." This violated the FDCPA, including but not limited to 15 U.S.C. § 1692g.

28. On or around January 11, 2011, Ms. Suppa mailed a letter to ARM in which she stated that she disputed the debt, pointed out that Ally was already aware of her dispute through its receipt of her complaint from the Attorney General's Office, and demanded that ARM "cease and desist all collection efforts" and correct any prior reports of the debt to credit bureaus.

29. Subsequent to Ms. Suppa's written demand to cease and desist collection efforts, ARM has continued to attempt to collect the debt through telephone calls and written communications. This violated various provisions of the FDCPA, including but not limited to 15 U.S.C. § 1692c(c).

30. In particular, after receiving Ms. Suppa's written cease-and-desist demand, ARM left voicemails concerning the subject debt on Ms. Suppa's cellular telephone on, among other dates and times, January 13, 2011, at 1:43pm; January 14, 2011, at 11:24am; and on January 24, 2011.

31. In particular, after receiving Ms. Suppa's written cease-and-desist demand, ARM placed additional phone calls to Ms. Suppa without leaving messages.

32. In light of these violations of the FDCPA, Ms. Suppa sent a letter to ARM on January 28, 2011, reiterating her cease-and-desist demand, and stating that she would file a lawsuit against ARM under the FDCPA unless an adequate settlement offer was received within 20 days.

33. On February 3, 2011, ARM responded to Ms. Suppa with a letter in which it sought to intimidate her by stating that if she was to file a complaint against ARM under the FDCPA, ARM "will obtain a stiff judgment for our costs for which we will have the court compel *you* to pay." By giving the misleading impression that such a judgment would be automatic in any lawsuit brought by Ms. Suppa and by seeking to intimidate Ms. Suppa out of enforcing her rights under the FDCPA, this letter violated numerous provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692e and 1692f.

34. Ms. Suppa has suffered actual damages as a result of ARM's illegal collection communications with herself and her daughter, in the form of anger, anxiety, emotional distress, frustration, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy.

**Claim for Relief**

**COUNT**
**(Violation of Fair Debt Collection Practices Act by ARM)**

35. Ms. Suppa repeats and realleges paragraphs 1 through 34 of her Complaint as though fully set forth in this paragraph.

36. The conduct of ARM as described in the Complaint violated 15 U.S.C. §§ 1692b(2) and 1692c(b) of the FDCPA in that ARM contacted a third party and discussed the debt allegedly owed by Ms. Suppa with that third party, with no purpose of obtaining location information about Ms. Suppa.

37. The conduct of ARM as described in the Complaint violated 15 U.S.C. §§ 1692d and 1692d(2) in that ARM caused Ms. Suppa's phone to ring repeatedly after being informed in writing and orally that the debt was disputed and was not owed, and requested in writing and orally to cease all contact, and thereby harassed, abused, and annoyed Ms. Suppa.

38. The conduct of ARM as described in the Complaint violated 15 U.S.C. § 1692c(c), in that ARM contacted Ms. Suppa about the alleged debt repeatedly after being requested in writing to cease and desist all such contacts.

39. The conduct of ARM as described in the Complaint violated 15 U.S.C. §§ 1692f(1) and 1692e(2), by misrepresenting the character, nature, and/or legal status of the alleged debt, and in particular, that it was past due.

40. The conduct of ARM as described in the Complaint violated 15 U.S.C. §§ 1692e and 1692f in that ARM's letter to Ms. Suppa sought to intimidate her out of enforcing her rights under the FDCPA by creating a misleading impression that ARM would automatically obtain a "stiff judgment" against her for "costs" were she to do so.

41. ARM's first written communication with Ms. Suppa overshadowed Ms. Suppa's validation rights under the FDCPA, in violation of 15 U.S.C. § 1692g.

42. Ms. Suppa has suffered actual damages as a result of ARM's illegal collection communications with herself and her daughter, in the form of anger, anxiety, emotional distress, frustration, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy.

**Prayer for Relief**

WHEREFORE, Plaintiff Tina M. Suppa respectfully demands that the Court enter judgment against Defendants for:

A. An award of actual damages against ARM and for Ms. Suppa, pursuant to 15 U.S.C. § 1692k(a)(1);

B. An award of statutory damages of $1,000 against ARM and for Ms. Suppa, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    C.    An award of costs, disbursements, and reasonable attorneys' fees against ARM and for Ms. Suppa, pursuant to 15 U.S.C. § 1692k(a)(3);

    D.    Pre-judgment and post-judgment interest on the above judgments; and

    E.    Such other and further relief as this Court may deem just and proper.

Dated: Buffalo, New York
       May 19, 2011

                                     Matthew A. Parham
                                     Law Offices of Matthew A. Parham
                                     70 Niagara Street, Suite 210
                                     Buffalo, New York  14202
                                     (716) 218-8876
                                     matthew@matthewparhamlaw.com

                                     *Attorney for Plaintiff Tina M. Suppa*

## VERIFICATION

STATE OF NEW YORK   )
                    ) ss:
COUNTY OF ERIE      )

TINA M. SUPPA, being duly sworn, deposes and says:

1. I am the Plaintiff in this civil proceeding.

2. I have read the above-entitled Complaint and Demand for Jury Trial prepared by my attorney and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3. I believe that this Complaint and Demand for Jury Trial is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this Complaint and Demand for Jury Trial is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5. I have filed this Complaint and Demand for Jury Trial in good faith and solely for the purposes set forth in it.

_____
Tina M. Suppa

Sworn to before me this
19th day of May, 2011

_____
Notary Public

JUDITH A. GROAT
Notary Public, State of New York
No. 5000396
Qualified in Niagara County
Commission Expires August 17, 2014